IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| TURNER CONSTRUCTION COMPANY )<br>375 Hudson Street, 6th Floor )<br>New York, NY 10014 )<br> )<br>         Plaintiff, )<br> )<br>v. )<br> )<br>BFPE INTERNATIONAL, INC. )<br>7512 Connelley Drive )<br>Hanover, MD 21076 )<br> )<br>   SERVE: )<br>   Pamela A. Boyer )<br>   7512 Connelley Drive )<br>   Hanover, MD 21076 )<br> )<br>         Defendant. ) | CASE No._____ |

## COMPLAINT

The plaintiff, Turner Construction Company ("Turner"), by and through counsel, respectfully submits this complaint against the defendant, BFPE International, Inc. ("BFPE"), and states as follows:

## PARTIES

1. The plaintiff, Turner, is a corporation organized and existing under the laws of New York with its principal place of business located in New York.

2. Upon information and belief, the defendant, BFPE, is a corporation organized and existing under the laws of Maryland with its principal place of business located in Maryland.

## JURISDICTION AND VENUE

3. Subject matter jurisdiction in this Court is established under 28 U.S.C. § 1332.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

5. This Court has personal jurisdiction over BFPE because BFPE is a citizen of Maryland and because BFPE transacts business in Maryland and Turner's cause of action arose from such business.

## FACTS

6. On or about April 15, 2013, Turner entered into a contract (the "General Contract") with the University of Maryland Medical Center ("UMMC") for construction services to be performed at the UMMC Anesthesia Faculty Offices (the "Project").

7. On or about August 27, 2013, Turner and BFPE entered into a subcontract whereby BFPE agreed to "perform and furnish all the work, labor, services, materials, plant, equipment, tools, scaffolds, appliances and other things necessary for Fire Protection and any other work listed under the Additional Provisions" (the "Work"). *See* Subcontract, attached hereto as **Exhibit 1**, at Article I.

8. As part of the Work required by the Subcontract, BFPE was required to "[c]oordinate all necessary outages with Turner and UMMC." *See* Exhibit 1, at Additional Provisions ("AP"), p. 6, ¶¶ 16, 32.

9. Also under the Additional Provisions of the Subcontract Agreement, BFPE was required to perform the Work as follows: "Cut, Cap and Make safe all existing fire sprinkler lines shown to be demolished or relocated and within the correlating specifications. This subcontractor shall be responsible for examining the existing conditions to verify the extent of the work." *See* Exhibit 1 at AP, p. 6, ¶ 20.

10. The Subcontract also states in part as follows:

> The Subcontractor hereby guarantees the Work to the full extent provided in the Plans, Specifications, General Conditions, Special Conditions and other Contract Documents. .... Without limiting the generality of the foregoing, the Subcontractor warrants to the Owner, the Architect and Contractor ... that the Work performed pursuant to this Agreement will be free from defects and that the Work will strictly conform with the requirements of the Contract Documents. Work not conforming to such requirements ... shall be considered defective. .... Failure of Subcontractor to honor and satisfy the foregoing and any other warranties or guarantees required of the Subcontractor under the Contract Documents, shall constitute a default by Subcontractor.

*See* Exhibit 1 at Article XXI.

11. The Subcontract also requires BFPE to comply with all applicable codes and standards as follows:

> The Subcontractor ... shall comply with all Federal, State, Municipal and local laws, ordinances, codes, rules, regulations, standards, orders, notices, and requirements ... without additional charge or expense to Contractor and shall also be responsible for and correct, at its own cost and expense, any violations thereof resulting from or in connection with the performance of its Work. ....

*See* Exhibit 1 at Article XIV.

12. In the event of any failure by BFPE to comply with codes or standards, Article XIV provides further as follows:

> The Subcontractor agrees to save harmless and indemnify Contractor from and against any and all loss, injury, claims, actions, proceedings, liability, damages, fines, penalties, costs and expenses, including legal fees and disbursements, caused or occasioned directly or indirectly by the Subcontractor's failure to comply with any of said laws, ordinances, rules, regulations, standards, orders, notices or requirements or to correct such violations therefore resulting from or in connection with the performance of Work.

*See* Exhibit 1 at Article XIV.

13. In the event of a breach by BFPE of any term of the Subcontract, the Subcontract requires BFPE to indemnify Turner as follows:

> Subcontractor, in addition to any other rights available to Contractor hereunder, agrees to indemnify, hold harmless and defend Contractor from and against any and all claims, demands, suits, damages, judgments, liabilities, costs and expenses (including legal fees and disbursements) arising out of or related to Subcontractor's breach of any term of the Agreement.

*See* Exhibit 1 at Article XI.

14.   The Subcontract also requires BFPE to assume responsibility for any damage to property arising out of or occurring in connection with the execution or preparation of the Work, and to indemnify Turner from and against any and all loss, cost, and expense, including legal fees, in the event any claims for damage are made or asserted. Article XXIII states in part as follows:

> The Subcontractor hereby assumes the entire responsibility and liability for any and all actual or potential damage ... to all property ... caused by, resulting from, arising out of or occurring in connection with the execution of the Work, or in preparation for the Work, or any extension, modification, or amendment to the Work by change order or otherwise. Should any claims for such actual or potential damage or injury (including death resulting therefrom) be made or asserted, whether or not such claims are based upon an Indemnified Party's alleged active or passive negligence or participation in the wrong or upon any alleged breach of any statutory duty or obligation on the part of an Indemnified Party, the Subcontractor agrees to indemnify and save harmless the Indemnified Party from and against any and all such claims and further from and against any and all loss, cost, expense, liability, damage, penalties, fines or injury, including fees and disbursements, that the Indemnified Party may directly or indirectly sustain, suffer or incur as a result thereof ...

*See* Exhibit 1 at Article XXIII.

15.   The Subcontract also requires BFPE to maintain "commercial general liability insurance including completed operations, contractual liability insurance against the liability assumed" by BFPE in the Subcontract. *See* Exhibit 1 at Article XXIV.

16.   The Subcontract further states in part as follows:

> The Subcontractor shall name the Indemnified Parties and such other entities as may be reasonably requested as additional insured under the policies of insurance listed in paragraph A maintained by the Subcontractor (with the exception of Workers Compensation insurance), whether during the performance of the Work or any time thereafter. The coverage to be provided to the additional insured shall be for all liability arising out of the Work.

*See* Exhibit 1 at Article XXIV.

17. The Subcontract further provides that the insurance "afforded the additional insureds shall be the primary insurance to any other insurance available to the additional insureds and that any other insurance carried by the additional insureds shall be excess of all other insurance carried by the Subcontractor and shall not contribute with the Subcontractor's insurance." *See* Exhibit 1 at Article XXIV.

18. The Subcontract states also that if BFPE's act or omission causes damage or if BFPE fails in the performance of any of the terms and provisions of the Subcontract or the other Contract Documents, BFPE is in default under the Subcontract, and that Turner is entitled to recover all costs and expenses incurred in connection therewith, including all costs and expenses in prosecuting its claims against BFPE. Specifically, Article XI of the Subcontract states in part as follows:

> Should the Subcontractor at any time, whether before or after final payment or completion of the Work ... cause by any act or omission ... damage to the work of Contractor or of any other contractors or subcontractors on the Project, or fail in the performance of any of the terms and provisions of this Agreement or of the other Contract Documents ... then in any of such events, each of which shall constitute a default hereunder on the Subcontractor's part, Contractor shall have the right, in addition to any other rights and remedies provided by this Agreement and the other Contract Documents or by law ... after three (3) days written notice to the Subcontractor ... (a) to perform and furnish through itself or through others any such labor or materials for all or any portion of the Work and to deduct the cost thereof from any monies due or to become due to the Subcontractor under this Agreement .... In case of Contractor taking action under this Article ... the Subcontractor shall not be

entitled to receive any further payment under this Agreement until the Work shall be wholly completed ... but if such cost and expense shall exceed such unpaid balance, then the Subcontractor and its surety, if any, shall pay the difference to Contractor. Such cost and expense shall include, not only the cost of completing the Work to the satisfaction of Contractor and the Architect and of performing and furnishing all labor, services, materials, equipment, and other items required therefore, but also all losses, damages, costs and expenses, (including legal fees and disbursements incurred in connection with reprocurement, in defending claims arising from such default and in seeking recovery of all such cost and expense from the Subcontractor and/or its surety), and disbursements sustained, incurred or suffered by reason of or resulting from the Subcontractor's default.

*See* Exhibit 1 at Article XI.

19. BFPE obtained commercial liability insurance in connection with the Subcontract and the Project from Indian Harbor Insurance Company ("Indian Harbor") and other insurance companies.

20. On or about January 9, 2014, an outage was scheduled in connection with the sprinkler system for the facility's C-wing. When BFPE commenced performance of the work and loosened a fitting on the sprinkler main branch valve, the fitting broke loose and sprinkler water flowed onto the tenth and eleventh floors of the C-Wing and into the nearby elevators (the "Incident").

21. The Incident caused significant property damage to certain areas of the UMMC Anesthesia Faculty Offices.

22. Turner demanded that BFPE repair the property damage and/or pay the costs of repair, but BFPE refused to do so.

23. Turner also demanded that BFPE's insurance carrier, Indian Harbor, pay the costs of repair, but Indian Harbor refused to do so.

24. As a result of the refusal of BFPE and/or Indian Harbor to repair the property damage and/or bear the costs of such repairs, Turner incurred costs of repair in the approximate amount of $240,000.

25. Also as a result of the refusal of BFPE and/or Indian Harbor to repair the property damage and/or bear the costs of such repairs, Turner has incurred legal fees and related costs.

## COUNT I
### (Breach of Contract vs. BFPE)

26. The plaintiff, Turner, reaffirms and realleges the allegations set forth in paragraphs 1 through 25 of the complaint.

27. Pursuant to the Subcontract, BFPE was required to perform all of the work associated with Fire Protection, including coordinating all outages and cutting, capping, and making safe all existing sprinkler lines, in accordance with the terms and conditions of the Subcontract and the Plans and Specifications of the Prime Contract.

28. Also under the Subcontract, BFPE was required to comply with all applicable laws, rules, regulations, codes, and standards in performing its work, and BFPE guaranteed and warranted that its work would be free from defects and in strict conformance with the terms of the Contract Documents.

29. Also pursuant to the Subcontract, BFPE agreed to indemnify Turner from and against any and all loss, claims, costs and expenses (including legal fees and disbursements) caused or occasioned by BFPE's failure to comply with applicable laws, rules, regulations, codes, and standards in performing its work and for any breach of any term of the Subcontract.

30. Also under the Subcontract, BFPE is responsible for damage to the property arising out of its work and is required to indemnify Turner from and against any claims and loss,

cost, or expense (including fees and disbursements) for any and all damage caused by, resulting from, arising out of or occurring in connection with the execution of the Work or in preparation for the Work.

31. Also under the Subcontract, BFPE was required to obtain insurance and name Turner (and others) as additional insureds, and that such coverage "shall be for all liability arising out of the Work." Exhibit 1 at Article XXIV.

32. On or about January 9, 2014, as a direct and proximate result of BFPE's failure to perform the outage work in accordance with the terms of the Subcontract, the Prime Contract, and/or industry standard, a fitting broke loose and water flowed from the UMMC facility's sprinkler system causing significant property damage to the UMMC Anesthesia Faculty Offices.

33. Despite Turner's demands, BFPE failed to repair the damage to the facility caused by the Incident, or to indemnify Turner from the costs relating to such repairs as required by the Subcontract.

34. Also despite Turner's demands, Indian Harbor refused to repair the damage to the facility, or to indemnify Turner from the costs relating to such repairs even though BFPE was obligated to obtain insurance for Turner (and others) for all liability "arising out of the Work."

35. As a direct and proximate result of BFPE's material breaches, Turner incurred costs of remedial work in the approximate amount of $240,000, plus legal and related costs.

36. Under the Subcontract, BFPE is obligated to reimburse Turner for all of Turner's costs and expenses arising from BFPE's default under the Subcontract, including the costs and expenses (including attorneys' fees) incurred in prosecuting this lawsuit.

WHEREFORE, premises considered, Turner respectfully requests that this Court:

1. Enter judgment in favor of Turner and against BFPE in the amount of at least $240,000, plus interest and costs, including attorney's fees.

2. Enter judgment for such other, further and general relief to which Turner may be entitled and which the Court shall deem just and equitable.

February 10, 2015

Respectfully Submitted,

Eric A. Frechtel (Bar No. 24945)
Email: efrechtel@babc.com
Kevin Mattingly (Bar No. 29610)
Email: kmattingly@babc.com
Bradley Arant Boult Cummings LLP
1615 L Street, NW, Suite 1350
Washington, DC 20036
Tel: 202-719-8249
Fax: 202-719-8349

*Counsel for Plaintiff Turner Construction Company*