**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

TURNER CONSTRUCTION COMPANY   :
                                :
         Plaintiff,             :
                                :
v.                                :  Civil Action No. 1:15-cv-000368-WDQ
                                :
BFPE INTERNATIONAL, INC.        :
                                :
         Defendant.          :

**BFPE INTERNATIONAL INC.'S OPPOSITION TO TURNER'S
MOTION TO STRIKE**

      Defendant/Counter-Plaintiff BFPE International Inc. (hereinafter "BFPE"), by its undersigned counsel, hereby states as follows in opposition to Turner's Motion to Strike Inadmissible Matter in Exhibits to BFPE's Motion for Summary Judgment:

**I.  <u>Introduction</u>**

      Turner's Motion to Strike should be denied. Given that Turner has introduced into the summary judgment record admissible evidence affirmatively establishing the very information in the material that it seeks to strike, the motion to strike could not possibly have been filed for the sole purpose of precluding consideration of evidence.  It would appear, at least in part, that the motion's purpose was to generate additional work for BFPE's counsel during the time frame in which it was also required to prepare its reply to Turner's opposition to BFPE's cross-motions for summary judgment and to distract from the fact that Turner's arguments in support of its own motions for summary judgment and in opposition to BFPE's cross motions are inadequate to avoid entry of judgment in BFPE's favor and against Turner. The motion is based on specious claims of inadmissibility that are contradicted by the record, the documents referenced, and

Turner's own discovery responses, and as set out more fully below, each of the identified exhibits is admissible and may properly support BFPE's Cross-Motions for Summary Judgment.

## II. <u>Arguments</u>

As a preliminary matter, Turner's motion is not properly made under Federal Rule 12(f). That Rule permits motions to strike "pleadings."   F.R.C.P. 12(f).   A motion and supporting papers are not "pleadings" as that term is defined in the Federal Rules.  *See* F.R.C.P. 7(a). Similarly, Rule 56(e) does not specifically contemplate a motion to strike evidence offered in support of a motion for summary judgment.  F.R.C.P. 56(e).  In addition to being improperly made, Turner's motion should be denied because each of the items sought to be stricken is evidence that is or can be presented in an admissible form.

> A.     References to "Insurance Recovery" in Turner's
>          <u>Change Orders (BFPE Exhibit F)  - are Not Hearsay.</u>

Turner argues that references to "insurance recovery" in each of the "Turner Construction Company Agreement Change Order" documents attached as Exhibit F to BFPE's Memorandum in support of its cross-motions for summary judgment, are hearsay and should be stricken. (Turner Motion to Strike, Document 25, p. 2).  This argument is meritless and, based on the circumstances surrounding the production of the documents themselves, disingenuous. The referenced documents were produced *by Turner* in answer to BFPE's interrogatories, pursuant to F.R.C.P. 33(d), and documents recently revealed by Turner confirm that the payments described as "insurance recoveries" in Exhibit F were, without question, made by an insurer and not by Turner.

BFPE served an interrogatory on Turner specifically intended to determine the sums paid *by Turner* allegedly in connection with the occurrence at issue in this case and Turner responded.

INTERROGATORY NO. 14:  Identify each expense or other pecuniary loss paid, sustained or incurred *by you* as a result of the occurrence alleged in the Complaint, including but not limited to: the amount of each expense or pecuniary loss, to whom each expense or pecuniary loss was paid; the date of each such payment, the identity of all persons having personal knowledge of each expense or other pecuniary loss; and all documents reflecting, relating or referring to each expense or other pecuniary loss.

RESPONSE:  The answer to this interrogatory may be determined by examining Turner's business records, and the burden of deriving or ascertaining the answer will be substantially the same for either Turner or BFPE. Accordingly, pursuant to Fed.R.Civ.P. 33(d), Turner refers BFPE to the documents that are being produced contemporaneously herewith.

(Exhibit 1 hereto, Turner's Answers to BFPE's Interrogatories, No. 14) (emphasis added). The documents produced contemporaneously with Turner's Answers to Interrogatories were provided on a single CD.  (*See* Exhibit 2 hereto, Declaration of Sandra T. Carson, Esquire, at ¶ 2.)[1]  That CD included, among others, subfolders called "Water Damage Charges" and "SCOs." (*Id.* at ¶ 4). The subfolder called "SCOs" contained each of the documents attached as Exhibit F in support of BFPE's cross-motion.  (*Id.* at ¶ 6).  Since those change orders reflected payments made to each of the subcontractors, (*id.* at ¶ 5-6), the change orders are responsive to Interrogatory No. 14.

Federal Rule 33(d), gives a party the option to produce its business records in response to an interrogatory under certain circumstances. By producing the documents contained in BFPE Exhibit F pursuant to that rule, Turner has admitted *under oath* that those documents (and others responsive to the same interrogatory) are its authentic business records and that they reflect payments made to subcontractors allegedly as a result of the occurrence at issue in this case.

---

[1] BFPE also served a Request for Production of Documents on Turner that required production of 1) its complete file related to the Occurrence, 2) all documents identified in its Answers to Interrogatories, and 2) all documents evidencing any pecuniary loss and/or payments made that Turner attributed to the Occurrence.  (Exhibit 3 hereto, Turner's Response to BFPE's Request for Production of Documents, Nos. 15, 20, 24).  Those responses were served contemporaneously with Turner's Answers to Interrogatories and were accompanied by a single CD comprising Turner's document production.  (Exhibit 2 hereto, ¶ 2; *See also* Exhibit 4 hereto, cover letter enclosing Turner's responses to BFPE discovery).

Because the change orders are the admitted business records of Turner Construction Company, the references to "insurance recovery" in those documents are not inadmissible hearsay. First, under F.R.E. 801(d), the references to "insurance recovery" in Turner's admitted business records constitute statements by Turner with regard to the source of the payments made to its subcontractors as reflected in the change orders. Since they are statements of an opposing party, the references to "insurance recovery" in Exhibit F are not hearsay at all when offered against Turner. *See* F.R.E. 801(d). Further, under F.R.E. 803(6), Turner's admission in its answers to interrogatories that the Change Orders are its own business records brings those documents within an exception to the hearsay rule – records of regularly conducted activity. F.R.E. 803(6). For these reasons, BFPE may properly rely on the references to "insurance recovery" in support of its Cross-Motions for Summary Judgment.

Moreover, Turner's request to strike the references to "insurance recovery" in Exhibit F has been mooted by its own actions. With its Opposition to BFPE's Cross-Motions for Summary Judgment, Turner has provided a sworn statement and authenticated documents that establish, without question, the fact that the very "insurance recoveries" referenced in the change orders that it seeks to preclude were, in fact, made. In other words, Turner has provided evidence establishing the truth of BFPE's claims that all of the payments to subcontractors made allegedly in connection with the occurrence at issue were not made by Turner itself. Specifically, in the Declaration of R. Gregory Stortstrom, Mr. Stortstrom attests to the sums paid by Turner's insurer, Liberty Mutual, to Turner's subcontractors and UMMC for damages and repairs allegedly relating to the water loss. (Declaration of R. Gregory Stortstrom, Document 27-2, ¶ 9). In doing so, Mr. Stortstrom has confirmed that the "insurance recovery" sums identified in BFPE's Exhibit F were, in fact, paid by Liberty Mutual and not by Turner. Going one step

further, Mr. Stortstrom also attaches and authenticates copies of "the checks issued by Liberty Mutual" as Exhibit 7 to his Declaration. (*Id.* at ¶ 9 and Exhibit 7 thereto).  Those checks and the itemized listing correspond directly to the payment amounts identified as "insurance recovery" on each of the change orders contained in BFPE's Exhibit F. (*See, Id.* and *compare* BFPE's Exhibit F to Cross-Motion for Summary Judgment, Document 22-8). It defies reason for Turner, after supplying direct evidence of the "insurance recovery" payments made by Liberty Mutual, to file a motion seeking to strike other evidence, produced by Turner under oath, of those same payments.

In addition, it bears noting that Mr. Stortstrom's Declaration marks the first time that BFPE has ever been served with either the checks attached as Exhibit 7 to that Declaration or the loan agreement under which Liberty Mutual allegedly issued those payments, which is attached to the Declaration as Exhibit 6.  (Exhibit 2 hereto, ¶ 8).  Though BFPE specifically requested "All documents depicting, reflecting, relating, referring to, or supporting any claim for past, present or future expenses of pecuniary losses attributed by you to the Occurrence, including but not limited to . . . contracts . . .canceled checks or copies of checks…or other documentation of payment," (Exhibit 3 hereto, Request No. 20), and a copy of Turner's "complete file related to the Occurrence," (*Id.* Request No. 15), Turner did not produce the checks or loan agreement. (Exhibit 2 hereto, ¶ 8).

Given those requests, Turner's failure to produce the evidence affirmatively demonstrating that payment to Turner's subcontractors was made by Liberty Mutual and not by Turner is an egregious discovery violation.  That violation is compounded by the fact that, in its Answer to Interrogatory No. 14, Turner referred BFPE to Turner's business records, including subcontractor invoices and the change orders showing payment of those invoice amounts, as

documents evidencing expenses or pecuniary losses incurred *by Turner* as a result of the Occurrence. (*See* Exhibit 1 hereto).  It is now obvious that with its Answer to Interrogatory No. 14, Turner intended to obfuscate the fact that it suffered no actual pecuniary loss as a result of the Occurrence and that it hoped to mislead BFPE – and potentially a jury – to conclude that Turner paid the invoices submitted by its subcontractors through change orders to their existing contracts.

The machinations of Turner that have brought the parties to this point suggest that Turner's current strategy is to argue in the moment whatever point it thinks will have a negative impact on BFPE, without regard for the impact of those same arguments on its own position. That it is willing to do so reflects a lack of faith in the contract-based arguments Turner has advanced in support of its own motions for summary judgment and in opposition to BFPE's cross-motions.

B.       The Statements in Paragraphs 3 and 5 in the Declaration of Sandra T. Carson are Made on Sufficiently Established Personal Knowledge.

Turner also complains about two paragraphs in the Declaration of Sandra T. Carson, Esquire, and (Document 22-11), regarding the content of Turner's document production in this matter. Despite Turner's claims, Ms. Carson's Declaration affirmatively establishes her personal knowledge regarding the facts set out in paragraphs 3 and 5 to the requisite degree. Specifically, in paragraph 2 of her Declaration, Ms. Carson states that she *personally* reviewed all documents produced by Turner in response to BFPE's Requests for Production of Documents.  (*See* Declaration of Sandra T. Carson, Document 22-11, at ¶ 2).  Such a personal review is adequate foundation for a statement regarding what that production did or did not contain within it.

Moreover, BFPE's  cross-motion attached copies of interrogatories propounded to Turner in which it specifically inquired as to details about claims asserted against Turner and payments

made or incurred by Turner arising out of the occurrence, to which Turner responded by referring to its produced documents pursuant to F.R.C.P. 33(d).  (*See* Exhibit H to BFPE's Cross-Motions, Document 22-10, Interrogatory/Answer Nos. 10, 14).  Further, BFPE requested that Turner produce its "complete file related to any claim asserted against Turner by any person or entity arising out of or related to the Occurrence," "all documents depicting, reflecting, relating, referring to, or supporting" Turner's claims for pecuniary loss arising out of the occurrence, and all documents identified in its Answers to Interrogatories.  (Exhibit 3 hereto, Nos. 12, 20, 24; *see also* Exhibit 2 hereto, ¶ 2).

By personally reviewing documents produced by Turner in response to BFPE's Requests for Production of Documents, Ms. Carson reviewed all of the documents provided by Turner related to alleged claims asserted against Turner and supposed pecuniary losses suffered by and/or payments allegedly made by Turner.  She therefore has sufficient personal knowledge to make the statements set out in her Declaration.  Indeed, Turner seems to accept that foundation with regard to paragraph 4 of Ms. Carson's declaration, which is *not* a subject of the Motion to Strike.  In paragraph 4, Ms. Carson states that "Turner did not produce any documents evidencing payment made by Turner itself of any amount to any person or entity in connection with the claimed damages other than a payment in the amount of $27,863.02 to Otis Elevator." (*See* Turner's Motion to Strike, Document 25, p. 2-3; Declaration of Sandra T. Carson, Document 22-11, ¶ 4).  Turner's failure to move as to paragraph 4 highlights the baseless nature of its motion and suggests that Turner is less concerned with whether the statements in Ms. Carson's Declaration have a proper foundation than with how harmful to its position Turner perceives those statements to be.  If there is no challenge to the paragraph 4, there is no basis to

challenge paragraphs 3 and 5, as all are made on the basis of the same knowledge and personal review of documents.

Further highlighting the baseless nature of Turner's argument is the fact that Turner did not submit a counter-affidavit challenging the accuracy of Ms. Carson's statements that:

> 3.  Turner did not produce any documents reflecting or referring to any claims or lawsuits made or asserted against Turner by any person or entity not a party to the contracts between Turner and University of Maryland Medical Center (hereinafter "UMMC") and Turner and/or Turner and BFPE.  It also did not produce any documents threatening such claims or lawsuits or any documents revealing any disputes between Turner and any such party over any damage or injury allegedly resulting from the January 21, 2014 water discharge at the UMMC location at 22 S. Greene Street, Baltimore.
>
> *          *          *
>
> 5. Turner did not produce any documents reflecting or identifying any payment made by Turner itself to UMMC for the replacement cost of items of personal property owned by UMMC that were allegedly damaged as a result of the January 21, 2014 water discharge. Its document production did not include any cancelled checks, receipts or releases, or correspondence to or from UMMC identifying Turner as the source of any payment made directly to UMMC for damages allegedly arising from that discharge.

(Declaration of Sandra T. Carson, Document 22-11, ¶¶ 3-5).[2]  Similarly, Turner does not identify or produce documents, previously produced by Turner, that Ms. Carson said were not provided. Given that BFPE's argument is based on the *absence* of documents provided by Plaintiff, it is hard-pressed to imagine how else to establish the lack of evidence but through a statement from a person who actually reviewed everything that Turner produced.  It would be an undue burden on the Court for BFPE to have produced the entirety of Turner's document production and to suggest that the Court review that production to confirm what was *not* there, when much of what was produced is immaterial to the issues raised by BFPE's motion.  Such an action would muddy

---

[2] As to the statement in paragraph 5, as set out in § A, above, Turner has now established by direct evidence the very fact BFPE inferred based on the lack of documents reflecting payments to UMMC.

the record and be a waste of the Court's time and resources.[3]  When viewed in light of Ms.

Carson's affirmed personal review of Turner's document production and the scope of the

documents requested by BFPE, the statements in paragraphs 3 and 5 are admissible and have

proper foundation.

       c.     <u>The UMMC Procedure is Properly Authenticated</u>.

Turner complains that BFPE improperly attempts to authenticate what it claims is an

"incomplete" procedure. (Motion to Strike, Document 25, p. 3-4).  First, Turner has no support

for its contention that the single procedure that BFPE produced as Exhibit P is "incomplete on its

face."  Contrary to Turner's assertion, BFPE did not purport to attach a "procedures manual"

from UMMC.  Rather, BFPE identified the document as "UMMC's Outages/Interventions and

Hot Work Permits" *procedure*.  (Declaration of Sandra T. Carson, Document 22-11, ¶ 7(l)).

There is nothing on the face of the document that suggests that it is not the complete procedure.

Indeed, the document itself is titled "Outages/Interventions and Hot Work Permits."  (*See* BFPE

Cross-Motion for Summary Judgment, Exhibit P, Document 22-18).  Moreover, though perhaps

inartfully done, the document is authenticated by the same Certificate of Custodian that was

attached to Exhibit K of Ms. Carson's Declaration. (Exhibit 2 hereto, at ¶ 10). That Certificate

references "documents" and was given with UMMC's response to BFPE's subpoena *duces*

*tecum*. (*See* Certificate of Custodian of Records, Document 22-13, p. 2).  That subpoena, served

by counsel for BFPE, requested several categories of documents, including

> 6.    Any policies, procedures, protocols, processes, requirements or other
> documents specifically pertaining to work performed at UMMC by sprinkler
> contractors/subcontractors which were in effect at any time during the duration of
> the Contract, including but not limited to, such documents pertaining to sprinkler
> system outages required as a result of service, construction, maintenance, etc.;

---

[3] If the Court believes a review of Turner's entire document production is warranted in this matter, BFPE
will provide a copy of that production on CD immediately upon the Court's request.

8.      All property insurance policies, including declarations pages, in effect from the date of the Contract through and including January of 2014, which policies covered the "1129 S11 Anesthesia Faculty Offices" and any other portion of the building in which the "1129 S11 Anesthesia Faculty Offices were located **[NOTE: any information pertaining to premiums may be redacted]**;

(Exhibit 5 hereto, Subpoena *duces tecum* and Schedule A) (emphasis in original).   While Ms.

Carson's Declaration could have been clearer that the Certificate of Custodian covered both

UMMC documents, this Court should accept that the attachment of the certificate to one

document identified as having been produced by UMMC, *the authenticity of which Plaintiff has*

*not challenged*, also authenticates the second document identified as having been produced

pursuant to the same subpoena.

> D.      The Report of William Koffel is Sufficiently Authenticated.

Plaintiff seeks to strike the report of William Koffel on the grounds that Ms. Carson has

nor properly established her personal knowledge of its authenticity and that it is "incomplete on

its face."  (Motion to Strike, Document 25, p. 1, 4-5).  Neither of these arguments is persuasive.

Ms. Carson is co-counsel of record for BFPE in this matter.  As such, she can be presumed to

have knowledge of the report of the expert retained on behalf of her client and the contents of his

report.  Indeed, Turner's complaint that the document is not authenticated seems disingenuous

since the report attached to BFPE's Cross-Motions as Exhibit Q is identical to the report

produced to Turner's counsel by BFPE's counsel on the expert disclosure deadline in this case.

(Exhibit 6 hereto, BFPE's Expert Witness Disclosure and appended report).  The only difference

between the two, and the basis for Turner's claim that the copy appended to BFPE's Cross-

Motion is "incomplete," is that the version attached to BFPE's Motion as Exhibit Q does not

contain Mr. Koffel's "full" statement of qualifications that is distributed by his company, his

testimony history and his rates.   Given that the report itself fully states Mr. Koffel's

qualifications to render the opinions therein, (*see* Report of William E. Koffel, P.E., Document 22-19), and the lack of the attached version of his qualifications does not bear on the issues raised in BFPE's Cross Motions, the failure to attach that document does not warrant its exclusion.  There is no argument that BFPE has attached an inaccurate copy of Mr. Koffel's report or that the report is not, in fact, that of Mr. Koffel even though it bears his signature.

To obviate any potential issues with Exhibit Q not having been signed under oath, BFPE will attach to its Reply to Plaintiff's Opposition a supplemental Exhibit Q in support of its cross-motions for summary judgment, which will include a Declaration of Mr. Koffel attesting to the authenticity of his report, the fact that he wrote and holds the opinions set out in that report, and stating his intention to testify at trial to the opinions set out in that report.  Under F.R.C.P. 56(e), this Court has the power to accept that Declaration in order to allow BFPE to properly support facts that are allegedly not properly supported.  F.R.C.P. 56(e)(1).  It should accept Mr. Koffel's Declaration and deny Turner's motion to strike BFPE's Exhibit Q.

## III. <u>Conclusion</u>

For the foregoing reasons, Turner's Motion to Strike should be denied.

Respectfully submitted,

<u>/s/  George D. Bogris</u>
George D. Bogris (Bar. No. 10458)
Sandra T. Carson (Bar No. 24699)
WHITNEY & BOGRIS, LLP
Twelfth Floor
401 Washington Avenue
Towson, MD  21204
(410) 583-8000 (ph)
(800) 893-1239 (fax)
gbogris@whitneybogris.com
scarson@whitneybogris.com
**Attorneys for Defendant**
**BFPE International, Inc.**

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 18th day of September, 2015, BFPE International Inc.'s Opposition to Turner's Motion to Strike was electronically filed, through which notification of such filing will be sent to all counsel of record who have registered with the electronic filing service for this matter.   Parties may access this document via the Court's electronic filing system.

*/s/ George D. Bogris*